[No. B009924. Second Dist., Div. Six. Nov. 7, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD WILLIAM HUNT, Defendant and Appellant.

**COUNSEL**

Susan L. Wolk, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and Carol Wendelin Pollack, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STONE, P. J.**—Edward William Hunt appeals from a judgment of conviction by plea and resultant prison sentence of 30 years. He raises issues

stemming from denial of a motion to withdraw his plea of guilty.[1] We find no error and affirm.

FACTS

*Procedural History*

By amended information filed July 12, 1984, appellant was charged with forty counts of assorted sexual offenses against his wife—six of penetration of genital or anal openings by foreign objects (Pen. Code, § 289), twenty-one of infliction of corporal injury on a spouse (Pen. Code, § 273.5), six of sexual battery (Pen. Code, § 243.4), three of sodomy (Pen. Code, § 286, subd. (c)), one of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), and three of spousal rape (Pen. Code, § 262, subd. (a)). He waived arraignment and pleaded not guilty.

August 8, 1984, appellant withdrew his plea of not guilty to eleven counts; four violations of Penal Code section 289, one of Penal Code section 243.4, four of Penal Code section 273.5, and two of Penal Code section 286, subdivision (c). The trial court found factual basis for the plea and ordered a felony disposition statement filed, the district attorney to dismiss remaining counts at time of sentencing.

September 5, 1984, appellant moved to withdraw his pleas of guilty and to appoint other counsel to represent him. The court appointed other counsel to represent him on the motion and held a hearing at which appellant and his public defender (McQuigg) testified. The court denied the motion. December 14, 1984, remaining counts having been dismissed, the trial court sentenced appellant to 30 years in prison.

*The Hearing on Appellant's Motion*

According to appellant, McQuigg discussed the defense of consent, informed him he did not believe it was a good defense and, in essence, told him he had no defense at all; McQuigg did not discuss the influence of alcohol or drug usage on his intent to commit the offenses. Appellant told a psychologist sent by McQuigg he felt his wife was a willing participant in the charged offenses. He informed McQuigg that he felt consent might be a defense, and, in the affidavit in support of his motion, stated that, "there are other defenses which are available to me which were not explained in full detail, such as consent of the alleged victim in this case."

---

[1] Appellant obtained a certificate of probable cause from the trial court. (Pen. Code, § 1237.5.)

When he changed his plea, asked by the deputy district attorney whether he was pleading freely and voluntarily, he responded, "Yes, ma'am. Against my better judgment, I am." When McQuigg advised him he had to give a yes or no answer, he said, "I will accept the deal, period." He testified he felt pressured to take the plea and subsequently told McQuigg he felt he had made a mistake. McQuigg told him that McQuigg's ending his career in the public defender's office may have affected his judgment and agreed that appellant should not have entered the plea of guilty.

According to McQuigg, he consulted with appellant between six and twelve times and, although they did not review the police reports page by page, they discussed the contents at length and, in particular, allegations made by appellant's wife. He may have used the term "specific intent." Appellant never said he had a good defense of consent and further told him his wife consented to some incidents, agreed reluctantly to others and did not consent to some at all. Appellant vacillated between going to trial and pleading to an acceptable sentence. McQuigg sent a psychologist to interview appellant for purposes of sentencing and to "double check" the possibility of an insanity defense. McQuigg discussed drug and alcohol usage with appellant and opined that voluntary intoxication was not a very good strategy. Appellant readily agreed. When McQuigg suggested trial as an alternative, appellant did not want to incur the risk involved.

After McQuigg left the public defender's office, he wrote a letter indicating that, *given the heavy sentence imposed,* it would have been in appellant's best interests to go to trial with the defense of consent and that a more aggressive attorney *might* have taken a different view of the strength of that defense. At the hearing, McQuigg said he did not believe he had been incompetent in representing appellant and that he had advised him properly and legally of all the consequences and best possible defenses. However, he felt that, since this was his last serious case, he might have been less enthusiastic to go to trial than usual and, therefore, his representation less vigorous than that of a more aggressive counsel.

Appellant contends that: (1) the trial court abused its discretion in denying his motion to withdraw pleas he previously entered; (2) his counsel was incompetent; (3) allowing the pleas to stand violated due process and the right to a fair trial; and (4) the sentence imposed constituted cruel and unusual punishment.

## Discussion

### 1. The Trial Court Did Not Abuse Its Discretion in Denying Appellant's Motion to Withdraw His Pleas.

A guilty plea may be withdrawn any time before judgment for good cause shown. (Pen. Code, § 1018; *People v. Waters* (1975) 52 Cal.App.3d

323, 328 [125 Cal.Rptr. 46].) "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea. [Citations.] But good cause must be shown by clear and convincing evidence." (*People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250].) ██ ██ Grant or denial of a motion lies within the trial court's sound discretion after consideration of all factors necessary to effectuate a just result; a reviewing court will not disturb its decision unless abuse is clearly demonstrated. (*People* v. *Waters, supra,* 52 Cal.App.3d 323, 328.) ██ Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged. (*People* v. *Urfer* (1979) 94 Cal.App.3d 887, 893 [156 Cal.Rptr. 682] citing *Blackledge* v. *Allison* (1977) 431 U.S. 63 [52 L.Ed.2d 136, 97 S.Ct. 1621].)

██ A defendant must understand the nature of the charges, elements of offenses, pleas and defenses which may be available and punishment which may be expected before a trial judge accepts his waiver and plea. (*In re Birch* (1973) 10 Cal.3d 314, 319 [110 Cal.Rptr. 212, 515 P.2d 12].) However, in determining the facts, the trial court is not bound by uncontradicted statements of the defendant. (*People* v. *Brotherton* (1966) 239 Cal.App.2d 195, 201 [48 Cal.Rptr. 513].)

*People* v. *Urfer, supra,* 94 Cal.App.3d 887, is analogous. There, defense counsel's uncontradicted declaration represented that defendant was reluctant to but ultimately yielded to counsel's persuasions and prejudices, and that defendant did not plead guilty willingly. The trial court denied the motion without comment. The appellate court held that counsel's warranty that defendant did not plead guilty willingly was not sufficient to embrace a prima facie *legal* showing that defendant's withdrawal of his not guilty plea was involuntary. (P. 892.) ██ Defendant's unwilling acceptance of his counsel's advice is not a ". . . factor overreaching defendant's free and clear judgment." (*Ibid.*) The appellate court distinguished the definition of "involuntary," i.e., done without choice or against one's will, unintentional, from "unwillingly," i.e., reluctant, offering resistance. (*Id.,* at p. 893.)

That distinction applies aptly to the case at hand. "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. ██ The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his decision." (*Brady* v. *United States* (1970)

397 U.S. 742, 756-757 [25 L.Ed.2d 747, 761, 90 S.Ct. 1463].) Postplea apprehension regarding the anticipated sentence, even if it occurs well before sentencing, is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea of guilty. (See *People* v. *Fratianno* (1970) 6 Cal.App.3d 211, 222 [85 Cal.Rptr. 755].)

Here, the trial court ruled there was no showing that: (1) counsel was ignorant of the law or facts; (2) any ignorance "caused the withdrawal of a crucial defense or caused the plea to be entered ignorantly or involuntarily"; (3) there was any "misrepresentation on the part of the sovereign"; (4) there was incompetence; or (5) there was duress. The court stated that reluctance or unhappiness is not the same as acting involuntarily and that "what we have basically is a case of what might be characterized as buyer's remorse on the part of the defendant and a case of self-questioning, self-appraisal, self-analysis, if you will, on the part of his lawyer after the fact, and neither is unusual."

 The trial court did not abuse its discretion. Despite his contention that he was not adequately advised of possible defenses and requisite intent, the evidence was contradictory and the trial court was entitled to resolve the factual conflict against appellant. Where two conflicting inferences may be drawn from the evidence, it is the reviewing court's duty to adopt the one supporting the challenged order. (*People* v. *Harvey* (1984) 151 Cal.App.3d 660, 667 [198 Cal.Rptr. 858].) Moreover, entry of his plea "against his better judgment" demonstrates only his continued reluctance and vacillation between desiring to plead and considering going to trial. The record does not demonstrate mistake, ignorance or overbearance of his free will.

## 2. *Trial Counsel Was Not Incompetent*

Appellant claims he was denied effective assistance of counsel because McQuigg failed to adequately advise him of the elements of the charges and defenses thereto. Where a defendant has been denied the effective assistance of counsel in entering a plea of guilty, he is entitled to reversal and an opportunity to withdraw his plea if he so desires. (*People* v. *McCary* (1985) 166 Cal.App.3d 1, 7 [212 Cal.Rptr. 114].) To be valid, guilty pleas must be based upon a defendant's full awareness of the relevant circumstances and the likely consequences of his action. (*Id.,* at p. 9.)

 We undertake a two-tier analysis to determine adequacy of counsel. First, appellant must show that trial counsel failed to act in a manner expected of reasonably competent attorneys acting as diligent advocates. Second, he must establish that counsel's acts or omissions resulted in with-

drawal of a potentially meritorious defense. (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 581 [198 Cal.Rptr. 855, 659 P.2d 1144] citing *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) Even if counsel's failure does not result in withdrawal of a defense, ineffectiveness may be proven by establishing "that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings." (*Fosselman,* 33 Cal.3d at p. 584.)

██ When a defendant expresses a desire to plead guilty, his counsel must investigate carefully all factual and legal defenses available to him. (*People* v. *Mattson* (1959) 51 Cal.2d 777 [336 P.2d 937].) Prejudice occurs if counsel's acts or omissions adversely affect defendant's ability to knowingly, intelligently and voluntarily decide to enter a plea of guilty. (*People* v. *McCary, supra,* 166 Cal.App.3d 1, 10.) If counsel's acts or omissions appear to result in defendant's entering a plea under the influence of "mistake, ignorance or inadvertence or any other factor overreaching defendant's free and clear judgment" which would justify withdrawal of his plea, he was ineffectively represented by counsel. (*Ibid.*)

██ McQuigg's testimony refutes appellant's contention. Appellant's quarrel is that both he and McQuigg had second thoughts about the possible strength of his defense of consent. The trial court aptly characterized McQuigg's ruminations as self-questioning. It is unlikely that a jury, faced with the incredible array of sadistic acts appellant committed on his wife, would be moved easily to believe that she "consented" to have her breasts and thighs sewn to the bed, her breasts stitched together, her labia and anus stitched closed before acts of sodomy, and an assortment of objects shoved up her vagina and anus. Moreover, the possibility that a more "aggressive" counsel would have urged appellant to trial which *might* have resulted in partial or total acquittal does not equal ineffective representation on McQuigg's part. McQuigg advised appellant of the risks inherent in going to trial. ██ Fear of receiving a longer sentence as motivation for a plea of guilty is not valid ground for later withdrawal of that plea. (*People* v. *Powers* (1984) 151 Cal.App.3d 905, 917 [199 Cal.Rptr. 142].) ██ In claiming ineffective assistance of counsel, defendant bears the burden, and proof must be a demonstrable reality and not speculation. (*People* v. *Waters, supra,* 52 Cal.App.3d 323, 328.) He has failed to meet that burden.

3. *Appellant Has Not Been Denied Due Process of Law*

At the hearing on appellant's motion, the trial court said, "Quite frankly, if I had my druthers, a motion to withdraw a plea before judgment and before it can be said that the defendant has seen the probation report and

got an idea of what's happening, that a motion of that sort ought to be granted without the showing of any cause." However, based upon the statutory and case-law prerequisite of good cause shown by clear and convincing evidence, the court denied the motion.[2] (See *People* v. *Cruz, supra,* 12 Cal.3d 562.) Appellant contends that having the burden of "good cause" by "clear and convincing evidence" denies defendants their day in court, and affects not only justice, but the appearance of justice. He argues that Penal Code section 1018 eliminates any discretion that the court may wish to exercise in order to assure due process. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) ▮ It is our obligation, whenever possible, to construe statutes to preserve their constitutionality. (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 598 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; *People* v. *Amor* (1974) 12 Cal.3d 20, 30 [114 Cal.Rptr. 765, 523 P.2d 1173].)

▮ " '[D]ue process' has never been, and perhaps can never be, precisely defined. . . . [T]he phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 24 [68 L.Ed.2d 640, 648, 101 S.Ct. 2153].) One must first consider any relevant precedents and then assess the several interests at stake to determine what constitutes "fundamental fairness" in any given situation. (*Ibid.*)

▮ The requirement of good cause shown by clear and convincing evidence, as interpreted by case law, does not deprive a defendant of due process. Appellant's theory of due process would strip the trial court of its discretion to decide whether justice is to be promoted by setting aside the plea. "Good cause" codifies the rule that leave to withdraw a plea with resulting inconvenience and expense should not be lightly granted. (*People* v. *Waters, supra,* 52 Cal.App.3d 323, 331.) "Whether justice would be promoted thereby" should also require consideration of the People's rights, including the right not to have guilty pleas set aside or withdrawn without good cause. (*Ibid.*) Nevertheless, courts should not deny withdrawal of a plea of guilty where it is evident that the ends of justice would be better served by permitting the defendant to plead not guilty instead. (*People* v. *McGarvy* (1943) 61 Cal.App.2d 557, 564 [142 P.2d 92].) The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty. (*Ibid.*) These considerations comport with due process and constitute good cause for withdrawal of a plea.

---

[2] Penal Code section 1018 provides in pertinent part: ". . . . On application of the defendant at anytime before judgment the court may, and in case of a defendant who appeared without counsel at the time of the plea to court must, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

Although appellant cites no authority for his proposition that a necessary showing of good cause violates due process, several cases are instructive. In *People* v. *Cruz, supra,* 12 Cal.3d 562, the California Supreme Court faced the question whether a defendant who validly waives counsel and pleads guilty is required to show "good cause" in support of a prejudgment motion to withdraw the plea. Appellant's argument therein was that the phrase "good cause" applied only to a defendant represented by counsel. The Supreme Court disagreed. The distinction in section 1018, the Supreme Court noted, was that, once the requisite showing of good cause was made, the court *must* grant withdrawal of the motion made by an unrepresented defendant whereas the court *may* grant withdrawal of a motion made by a defendant represented by counsel when he entered his plea. (*Id.,* at p. 566.)

Similarly, in *Blackledge* v. *Allison, supra,* 431 U.S. 63, the United States Supreme Court held that dispositions by guilty pleas are entitled to finality unless they are the product of factors such as misunderstanding, duress or misrepresentation which renders the plea constitutionally inadequate as a basis for imprisonment. Implicit in these holdings is the inference that statutes which acknowledge such factors as good cause for withdrawal of a plea are constitutionally sound.

Appellant argues it would not be beneficial to go to trial since he would risk longer imprisonment. He further contends the trial court's denial of his motion resulted in unfairly depriving him of his constitutional right to a trial by eliminating any discretion the court wishes to exercise if it feels that procedural due process is being violated. Appellant is incorrect. The trial court *has* discretion to grant a motion after consideration of all factors necessary to bring about a just result. (*People* v. *Waters, supra,* 52 Cal.App.3d 323, 328.) Moreover, that decision will not be disturbed on appeal absent clear demonstration of abuse of discretion. (*Ibid.*) We find that Penal Code section 1018 comports with the guarantee of due process of law.

## 4. *The 30-year Sentence Imposed Was Not Cruel and Unusual Punishment*

 Appellant contends that sentences for individual counts were constitutionally defective because they failed to recognize significant gradations of culpable behavior. (See *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073].) "Gradations of culpability" are troublesome to distinguish where a defendant has entered a plea of guilty. When a defendant pleads guilty to a crime not divided into degrees, or when he pleads guilty to a particular degree of crime, no trial is held concerning guilt and there are no controverted issues since every element of the crime is admitted. (*People* v. *Sabados* (1984) 160 Cal.App.3d 691, 695 [206 Cal.Rptr. 799];

*People* v. *Ward* (1967) 66 Cal.2d 571, 577 [58 Cal.Rptr. 313, 426 P.2d 881].) His right to appeal is confined rationally and necessarily to fundamental errors. (*Ibid.*)

The necessity of a certificate of probable cause establishes a procedure for sifting out frivolous claims among issues which have not been waived, but section 1237.5 does not affect the grounds on which defendant may appeal following a guilty plea. (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 9 [136 Cal.Rptr. 409, 559 P.2d 1028].) In this case, facts of the offense and the purported consent of the victim which would have been his defense had he gone to trial are necessary for consideration of disproportionality concerning "gradations" of the offense. As such, they are not cognizable on appeal following a guilty plea.[3] (See *People* v. *Sabados, supra,* 160 Cal.App.3d 691.) The only question would be whether the court properly considered factors in mitigation at sentencing. (Cal. Rules of Court, rule 423.) Appellant claims disproportionality of his punishment based on the nature of the offense compared with other punishments imposed for crimes considered more serious or for the same crime.

 A particular punishment may violate article I, section 17 (formerly art. I, § 6) of the California Constitution if it is so disproportionate to the crime for which it was inflicted that it "shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921]; *People* v. *Bestelmeyer* (1985) 166 Cal.App.3d 520, 529 [212 Cal.Rptr. 605].) This broad general rule can be applied to facts of a given case by applying the following criteria: (1) the nature of the offense and/or offender with particular reference to the degree of danger both present to society; (2) comparison of the challenged penalty with punishment prescribed in the same jurisdiction for different offenses which must be deemed more serious; (3) comparison of the challenged penalty to punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision. (*Ibid.*)

 The essence of appellant's contention is that he is not a danger to society because he committed the crimes only against his wife who was, at least in part, a willing participant, and psychologists' reports indicated that the crimes occurred in the context of "mutually consensual sadomasochistic acts." As stated *supra,* this argument is foreclosed by his plea. When he pleaded guilty, he admitted the facts charged in the information on those counts. These facts reveal the violent nature of the offenses and the potential

---

[3]We also recognize that the punishment should fit the offender and not merely the crime. *Williams* v. *New York* (1949) 337 U.S. 241, 247 [93 L.Ed. 1337, 1342, 69 S.Ct. 1079]. In that vein, the court should consider the past life and habits of a particular offender. (*Ibid.*)

danger to society from one who commits them. (See *In re Foss, supra,* 10 Cal.3d 910, 919.) ■ Next, he argues that the Legislature has provided for several more heinous offenses with lesser degrees of punishment, i.e., robbery (two, three or five years), voluntary manslaughter (three, six or eleven years), involuntary manslaughter (two, three or four years) and mayhem (two, four or six years). The degree of heinousness is obviously in the eye of the beholder.

We do not find appellant's sentence to be cruel and unusual punishment when compared with either more "serious" offenses or other defendants convicted of similar offenses. In *People* v. *Bestelmeyer, supra,* 166 Cal.App.3d 520, decided by this court defendant, sentenced to 129 years for sexual offenses, made a similar challenge. He pointed out he had no prior criminal record, he was suffering from mental impairment at the time of the offenses and there was no evidence that he ever victimized anyone other than his stepdaughter. We held that when these factors were weighed against the serious nature of the offenses, and the danger to the community, we could not conclude that the sentence "is so disproportionate to the crimes for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Id.,* at p. 530.) We also noted that the argument that the constitutional defect lies in the mandatory consecutive sentences for these offenses has been made and rejected on several occasions since the Legislature enacted section 667.6, subdivision (d) in 1979. (*Id.,* at p. 531; see *People* v. *Preciado* (1981) 116 Cal.App.3d 409 [172 Cal.Rptr. 107]; *People* v. *Karsai* (1982) 131 Cal.App.3d 224 [182 Cal.Rptr. 406].)

In *Karsai,* the appellate court explained that, "[i]n enacting Penal Code section 667.6 the Legislature has chosen to treat violent sex offenses and violent sex offenders in a manner differently than other types of offenses and offenders. . . . The statute is directed at multiplicity of offenses by providing for full, separate, consecutive sentencing. In view of the outrageous nature of violent sexual offenses and the manifest danger to society from recidivism and multiplicity of offenses, we cannot say that the severity of the punishment is so disproportionate to the crimes so as to shock the conscience and offend fundamental notions of human dignity." (131 Cal.App.3d 224, 242.)

We adopt that reasoning here. The trial court imposed only the middle or lower terms on the mandatory consecutive sentences and imposed concurrent terms on four other counts. As we stated in *Bestelmeyer,* punishment is not cruel or unusual merely because the Legislature may have chosen to permit a lesser punishment for another crime. Leniency as to one charge does not transfer a reasonable punishment into one that is cruel or unusual. (166 Cal.App.3d 520, 530-531.)

Appellant has not cited any authority from which we can conclude that other jurisdictions would have treated him more kindly. We do note that in *People* v. *Karsai, supra,* 131 Cal.App.3d 224, wherein defendant was convicted of similar violent sex offenses, he admitted most states appear to have comparable penalties for the types of convictions he suffered. While we have no similar admission here, appellant's lack of contrary evidence is some indication that he could find none.

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 19, 1986.